**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
SECURITIES & EXCHANGE COMMISSION,

         Plaintiff,

 -against-

PREMIER LINKS, INC., THEIRRY RUFFIN
a/k/a THEIRRY REGAN, DWAYNE MALLOY,
CHRISTOPHER DAMON,

         Defendants,   **REPORT AND RECOMMENDATION**

  -and-             **14-CV-7375 (CBA) (ST)**

JOHN DESANTIS, ROBERT BLOOME,
JOSEPH J. BYRNE, NICHOLAS SPINELLI,
MARGARET RAVA a/k/a MARGARET
AMATULLI, DARNEL JACKSON, FREDDIE
ANDERSON, QUATRO HOLDINGS, INC.,
and NYC CLAIMS, INC.,

         Relief Defendants.
------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

  On December 18, 2014, Plaintiff Securities & Exchange Commission (the "SEC") filed an enforcement action ("Complaint") against (1) Premier Links, Inc. ("Premier Links"), Christopher Damon ("Daman"), Dwayne Malloy ("Malloy"), and Theirry Ruffin a/k/a Theirry Regan ("Ruffin") (collectively, the "Premier Links Defendants"); and (2) Freddie Anderson ("Anderson"), Robert Bloome ("Bloome"), Joseph J. Byrne ("Bryne"), John DeSantis (DeSantis"), Darnel Jackson "(Jackson"), Margaret Rava a/k/a Margaret Amatulli ("Rava"), Nicholas Spinelli ("Spinelli"), Quatro Holdings, Inc. ("Quatro"), and NYC Claims, Inc. ("NYC Claims") (collectively, the "Relief Defendants").

The SEC's Complaint alleged violations of the Securities Act of 1933, the Securities Exchange Act of 1934, and the Rules promulgated thereunder ("Rule 10b-5").

On June 16, 2016, the SEC moved for a default judgment against certain Defendants including all the Premier Links Defendants, and certain Relief Defendants including Spinelli, Bloome, Anderson, Byrne, Rava, and Quatro. The Court granted in part and denied in part the SEC's Motion for Default Judgment. More specifically, the Premier Links Defendants were found liable as to the securities law violations and the Court issued a permanent injunction enjoining them from committing or aiding and abetting future violations of the securities laws. However, the Motion for Default Judgment was denied with respect to the SEC's request for an order of disgorgement of any ill-gained profits and a civil monetary penalty.

Now before this Court is the SEC's Motion for Entry of Judgment under Rule 54(b) against the following: (1) Premier Links Defendants Damon and Ruffin to permanently enjoin them from committing future violations of the securities law and for disgorgement of all ill-gotten gains and for prejudgment interest; (2) Ruffin to pay a civil penalty; and (3) Relief Defendants Bloome and Byrne to disgorge all ill-gotten gains and for prejudgment interest. The SEC also moved to approve Consent Judgments against Defendants Amatulli, Jackson, Malloy, and DeSantis.

For the reasons states below, this Court respectfully recommends that the SEC's Motion for Entry of Judgment under Rule 54(b) be granted, and Motions for Consent Judgments be granted.

I.  **BACKGROUND**

A.  **Facts**

The SEC is an independent federal regulatory agency charged by Congress with the administration and enforcement of the securities laws and the regulations that are promulgated pursuant to 17 C.F.R. § 200.1 *et seq.* *See* Compl. ¶ 10.

Defendants in this case are divided into two categories. First, the Premier Links Defendants including Premier Links, Damon, Malloy, and Ruffin, who are alleged to have been directly involved in misconduct at Premier Links. *See* SEC's Mot. for Entry of Judgment, Mem. of Law at 8. Second, the Relief Defendants including Anderson, Bloome, Byrne, DeSantis, Jackson, Rava, Spinelli, Quatro Holdings, and NYC Claims, who were affiliated with Premier Links (or entities affiliated with those individuals) and allegedly benefited from the Premier Links Defendants' misconduct.

The allegations in the SEC's Complaint, which were deemed true by virtue of the default, are that from at least December 2005 to approximately August 2012 (the "Relevant Period"), Premier Links acted as an unregistered broker-dealer based in Staten Island, New York, soliciting prospective clients to invest in unregistered securities of certain start-up companies that might conduct an initial public offering in the future. *See* Compl. ¶¶ 1, 2, 13; *see also* Report and Recommendation at 4 (Sept. 14, 2017), DE 72. Mr. Malloy, as President of Premier Links, and Mr. Damon and Mr. Ruffin, as sales representatives of Premier Links, solicited investments in unregistered securities on behalf of Premier Links during the Relevant Period. *See* Compl. ¶¶ 14-16. Premier Links sold unregistered securities of several companies. *Id.* ¶ 26. To induce investments, prospective investors were often mailed or provided with a cover letter from Mr. Malloy in his role as president of Premier Links and a stock purchase agreement providing, *inter*

3

*alia*, "I understand that Premier Links, Inc. will arrange to have the company transfer agent effect the issuance of the shares from Premier Links, Inc. and the shares certificate representing this purchase will be sent to me at the address below." *Id.* ¶¶ 46, 80.  Despite the stock purchase agreement's express representation regarding the transfer of shares to investors, Premier Links frequently did not actually effectuate an issuance of shares or a transfer of the share certificates. *Id.* ¶¶ 46, 70, 71. Individuals who invested with Premier Links transferred money to Premier Links via check and wire transfer. *Id.* ¶¶ 50, 56, 59, 68.

Both the Premier Links Defendants and the Relief Defendants received and misappropriated the investor funds. *See generally* Declaration of Joe A. Arroyo ("Arroyo Decl." or the "Arroyo Declaration"), DE 66. The Premier Links Defendants sold approximately $9.3 million of stock during the Relevant Period and diverted more than 90% of the proceeds through, *inter alia*, conversions to cash or transfers by check to individual defendants or entities allegedly controlled by Defendants in this case. *Id.* ¶¶ 38-43.  The primary Premier Links bank account received approximately $8.8 million in investor funds since December 2005; Mr. Bloome, Mr. Malloy, and Mr. Spinelli had signing authority for this account. *Id.* ¶ 39.  A secondary Premier Links bank account received approximately $518,186 in investor funds from May 2007 through March 2012; Mr. Spinelli had sole signing authority over this account, but Ms. Rava also exercised control over the account. *Id.* ¶ 41.  The funds from these bank accounts were, *inter alia*, converted to cash, spent on personal goods and services, such as retail shopping, rent payments, car payments, and at restaurants; and transferred by check. *Id.* ¶ 42.

4

### B. Procedural History

On December 18, 2014, the SEC filed a Complaint against the Premier Links Defendants and the Relief Defendants alleging violations under the Securities Act, the Exchange Act and Rule 10b-5. DE 1.

On March 8, 2017, following requests from Mr. DeSantis (DE 68) and Mr. Jackson (DE 69), The Honorable Carol Bagley Amon stayed the case as to Mr. DeSantis, Mr. Jackson, and NYC Claims. *See* Order Staying Case dated Mar. 8, 2017. The remaining Defendants, including all the Premier Links Defendants and the Relief Defendants including Mr. Bloome, Mr. Byrne and Ms. Rava, ("Defaulting Defendants"), have failed to appear, answer, or otherwise respond to the Complaint despite proper service.[1] *See* DE 8, 19, 21, 24, 28 to 34, 40-43, 40-46, 56, 93-94.

On September 14, 2017, this Court issued a Report and Recommendation with a recommendation that the SEC's Motion for Default Judgment be granted as to the liability of the Premier Links Defendants and issued a permanent injunction against them enjoining them from committing or aiding and abetting future violations of the securities laws. DE 72. It was further recommended that the Motion for Default Judgment be denied with respect to the SEC's request for an order of disgorgement of ill-gained profits and a civil monetary penalty. *Id*. On February 23, 2018, The Honorable Carol Amon, adopted this Court's Report and Recommendation. DE 74.

On April 18, 2018, the SEC provided a letter to this Court providing its reasonable approximation of the ill-gotten gains received by Defendants during the five-year period prior to the commencement of the action. DE 76. The SEC explained, however, that since several defaulting parties had pleaded guilty in a related criminal action while the SEC's Motion for

---

[1] On October 25, 2021, the SEC filed a Notice of Voluntary dismissal against Relief Defendants Quatro Holdings, Spinelli, and Anderson.

Default Judgment was pending, and that the forfeiture and restitution orders and jail sentences in the related criminal action would impact the SEC's position regarding disgorgement and civil penalties, the Court should address monetary relief once the criminal action had been resolved.[2]

Because the related criminal action is now largely resolved (with the exception of the sentencing of Relief Defendant Freddie Anderson and the entering of restitution orders), the SEC now requests for the disgorgement of ill-gained profits, prejudgment interest and civil penalties. Accordingly, on October 25, 2021, the SEC filed the instant Motion for Entry of Judgment under Rule 54(b) against the following: (1) Premier Links Defendants Damon and Ruffin to disgorge all ill-gotten gains and pay prejudgment interest permanently and further enjoin them from committing future violations of the securities law including Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, thereunder, Section 5 of the Securities Act, 15 U.S.C. § 77e, Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)]; (2) Ruffin to pay a civil penalty; and (3) Relief Defendants Bloome and Byrne to disgorge all ill-gotten gains and pay prejudgment interest.

## II.    LEGAL STANDARD

"[I]n the federal district courts, the entry of a final judgment is generally appropriate 'only after all claims have been adjudicated.'" *Novick v. AXA Network, LLC*, 642 F.3d 304, 310 (2d Cir.2011) (quoting *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 629 (2d Cir.1991)). Rule 54(b) of the Federal Rules of Civil Procedure provides "an exception to this general principle," providing:

> When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved,

---

[2] *USA v. Amatulli, et al.*, 15-CR-135 (E.D.N.Y. (ENV)).

6

the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b). The decision to enter a partial final judgment is left to the discretion of the district court, which is to be exercised "in the interest of sound judicial administration." *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1092 (2d Cir.1992) (internal quotation marks omitted). The "historic federal policy against piecemeal appeals" requires the court to use its discretion "sparingly," certifying a partial final judgment only if there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal. *O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 40–41 (2d Cir.2003) (quoting *Cullen v. Margiotta*, 618 F.2d 226, 228 (1980)).

A final Rule 54(b) entry of judgment as to disgorgement of ill-gained profits, prejudgment interest and civil penalty is appropriate in this case because the liability as to the Premier Links Defendants and certain Relief Defendants was previously established by the Court's in granting the SEC's Motion for Default Judgment.

### III.   DISCUSSION

####   A.   **Defendants Damon, Ruffin, Bloome, and Byrne Should Disgorge the Ill-Gained Profits**

The SEC seeks the disgorgement of ill-gotten gains from Defendants Damon, Ruffin, Bloome, and Byrne pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Sections 21(d)(3) and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(7)].

Disgorgement of illegally obtained profits is an appropriate remedy for violations of the securities laws. *See SEC v. Tome*, 833 F.2d 1086, 1096 (2d Cir. 1987), *cert. denied*, 486 U.S. 1014 (1988). Its primary purpose "is to deprive violators of their ill-gotten gains, thereby

7

effectuating the deterrence objectives of" the securities laws. *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996), *cert. denied*, 522 U.S. 812 (1997). Disgorgement has long been viewed as an equitable remedy ordered "to 'deprive . . . defendants of their profits in order to remove any monetary reward for violating' securities laws and to 'protect the investing public by providing an effective deterrent to future violations.'" *See Kokesh v. SEC*, -- U.S. --, 137 S.Ct. 1635, 1640 (2017); *SEC v. Texas Gulf Sulphur Co.*, 312 F. Supp. 77, 92 (S.D.N.Y. 1970), aff'd in part, rev'd in part, 446 F.2d 1301 (2d Cir. 1971)); *see SEC v. Contorinis*, 743 F.3d 296, 306 (2d Cir. 2014).

Courts have wide discretion to determine whether disgorgement is appropriate and the amount that should be disgorged; "in setting the disgorgement amount, a court must focus on the extent to which a defendant has profited from his [illegal conduct]." *Securities and Exchange Commission v. Carrillo Huettel LLP*, 13 Civ. 1735 (GBD) (JCF), 2017 WL 213067 at 7 Jan. 17, 2017) (internal quotation marks and citation omitted). "The amount of disgorgement ordered need only be a reasonable approximation of profits causally connected to the violation, [and] any risk of uncertainty [in calculating disgorgement] should fall on the wrongdoer whose illegal conduct created that uncertainty." *First Jersey Sec., Inc.*, 101 F.3d at 1475 (2d Cir. 1996) (internal quotation marks and citations omitted). Joint and several liability is permitted for disgorgement where two or more individuals or entities collaborate to violate federal securities laws. *SEC v. Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 288 (2d Cir. 2013); accord *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 385 (S.D.N.Y. 2007).

Pursuant to the Supreme Court's decision in *Kokesh*, the Court held that the SEC was not entitled to disgorgement of ill-gotten gains that the parties received more than five years prior to the commencement of the action. Following the decision, however, on January 1, 2021,

8

Congress amended the Exchange Act to codify and expand the Commission's ability to obtain disgorgement in civil enforcement actions. Section 6501 of the National Defense Authorization Act for Fiscal Year 2021 ("NDAA"), H.R. 6395 (116th) (enacted—veto overridden Jan. 1, 2021), amends Exchange Act Section 21 [15 U.SC. § 78u] and extends the statute of limitations for disgorgement to ten years for scienter-based violations, including Securities Act Section 17(a)(1) and Exchange Act Section 10(b). The amendments permit disgorgement to be sought for up to ten years prior to the Government's filing of the complaint for "conduct that violates— (I) section 10(b); (II) section 17(a)(1) of the Securities Act of 1933 (15 U.S.C. 77q(a)(1)); (III) section 206(1) of the Investment Advisers Act of 1940 (15 U.S.C. 80b-6(1)); and (IV) any other provision of the securities laws for which scienter must be established." 15 U.S.C. § 78u(d)(8)(A). In its Report and Recommendation on Liability, the Court found that the Premier Links Defendants including Damon and Ruffin acted with the requisite scienter in violating Section 10(b) of the Exchange Act. *See* Report and Recommendation at 13 (Sept. 14, 2017) DE 72.

The ten-year period applies to any "action or proceeding that is pending on, or commenced on or after, the date of enactment of this Act." NDAA § 6501(b). Because this action was pending when the NDAA was enacted and because the action involves multiple claims, this Court recommends that for the scienter-based claims, the ten-year period be applied, and for the claims not requiring scienter, the five-year period be applied. *See United States Securities and Exchange Commission v. Ahmed*, Civil No. 3:15cv675 (JBA), 2021 WL 2471526 at 2-3 (D. Conn. June 16, 2021).

Here, the SEC seeks disgorgement of the investor money from Premier Links Defendants Damon and Ruffin, and also from Relief Defendants Bloome and Byrne. As to Bloome and

9

Byrne, the SEC seeks disgorgement of ill-gotten gain that they received within five years of the filing of the Complaint. *See* SEC's Mot. for Entry of Judgment, Mem. of Law at 4-5. The Complaint was filed on December 18, 2014. DE 1. As to Damon and Ruffin, since the Court concluded that they acted with the requisite scienter in violating 15 U.S.C. § 77q(a); 15 U.S.C. § 78j(b); and 17 C.F.R. § 240.10b-5, the SEC included all ill-gotten transfers, with a ten-year applicable period, from December 2005 through August 2012. *Id*. With respect to Damon, the SEC also requests that his disgorgement should be offset by the amount of restitution that he is ultimately ordered to pay in the related criminal action. *Id*. In support of the instant Motion, the SEC submits the declaration of Joe Arroyo, a paralegal in the Enforcement Division of the SEC. *Id*. Mr. Arroyo reviewed all of the records from the bank institutions used by Premier Links as well as bank records from certain accounts that received large sums of money from the Premier Links bank accounts. *Id*. Based on his review of the bank records, Mr. Arroyo concludes that Damon received $107,263.50 of investor money, Ruffin received $42,010 of investor money, Bloome Received $340, 675 of investor money, and Byrne received $59,165 of investor money. *Id*.; Arroyo Decl. ¶¶ 7-10.

Thus, this Court respectfully recommends that Damon, Ruffin, Bloome, and Byrne disgorge the investor money that they received. More specifically, Damon should disgorge $107,263.50 and his amount should be offset by the amount of restitution that he is ultimately ordered to pay in the related criminal action; Ruffin should disgorge $42,010; Bloome should disgorge $340, 675; and Byrne should disgorge $59,165.

B.  **Defendants Damon, Ruffin, Bloome, and Byrne Should Pay the Pre-Judgment Interest**

In addition to disgorgement of ill-gotten gains, the SEC seeks prejudgment interest from Defendants Damon, Ruffin, Bloome, and Byrne.

The purpose of ordering payment of prejudgment interest is to deprive the wrongdoer of the benefit of "what amounts to an interest free loan procured as a result of illegal activity." *SEC v. Moran*, 944 F. Supp. 286, 295 (S.D.N.Y. 1996); *see also SEC v. Warde*, 151 F.3d 42, 50 (2d Cir. 1998) (prejudgment interest can be awarded in addition to disgorgement to deprive a defendant of the time value of money). As with the award of disgorgement, the Court has broad discretion whether to grant prejudgment interest and what rate to use for calculation. *See First Jersey*, 101 F.3d at 1476-77 (using IRS underpayment rate); 17 C.F.R. §201.600(b) (SEC Rule of Practice states that prejudgment interest is computed at IRS underpayment rate, compounded quarterly).

In calculating prejudgment interest on the disgorgement amount, the SEC applied the IRS underpayment rate starting from the last date of that each Defendant received money from Premier Links and ending on the date that the SEC filed its Complaint. That calculation yields a prejudgment interest figure of $8,615.37 relating to the $107,263.50 in Damon's ill-gotten compensation; $3,374.22 relating to the $42,010 in Ruffin's ill-gotten compensation; $28,263.42 relating to the $340,675 in Bloome's ill-gotten compensation; and $4,752.12 relating to the $59,165 in Byrne's ill-gotten compensation.

Since Defendants and Relief Defendants benefitted from the illicit payments, they should repay an approximation of the interest so that it may be returned to defrauded investors. *See SEC*

11

*v. Contorinis*, 743 F.3d 296, 308 (2d Cir. 2014); *SEC v. Boock*, No. 09 Civ 8261, 2012 WL 3133638, 5 (S.D.N.Y. Aug. 2, 2012).

Thus, this Court respectfully recommends that Damon should pay prejudgment interest of $8,615.37; Ruffin should pay prejudgment interest of $3,374.22; Bloome should pay prejudgment interest of $28,263.42; and Byrne should pay prejudgment interest of $4,752.12.

### C.    Defendant Ruffin Should Pay A Civil Penalty of $600,000

The SEC also seeks civil penalty from Ruffin. Even though the SEC is entitled to seek a civil penalty from Damon, the SEC does not seek a penalty from him in light of his conviction in the related criminal action and significant term of imprisonment (time served, which was approximately 22 months), which will provide appropriate punishment and deterrence in this case.

The civil penalties authorized by the securities laws serve a dual purpose: to punish the individual violator for his past violations and deter future violations of the securities laws. *SEC v. Opulentica, LLC*, 479 F. Supp. 2d 319, 331 (S.D.N.Y. 2007) (citation omitted) (imposing third-tier civil penalties); *see also SEC v. Ramoil Mgmt., Ltd.*, No. 01-cv-9057(SC), 2007 WL 3146943, at 13 (S.D.N.Y. Oct. 25, 2007) (civil penalties "fulfill a number of other [nonpunitive] purposes such as . . . deterrence, fostering public confidence in the securities system, and promoting stability in the securities market").

Both the Securities Act and the Exchange Act authorize three tiers of monetary penalties for violations of the securities laws. *See* Securities Act Section 20(d), 15 U.S.C § 77t(d); Exchange Act Section 21(d)(3), 15 U.S.C. § 78u(d)(3). A first-tier penalty may be imposed for any violation; a second-tier penalty is appropriate if the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement;" and a third-tier

12

penalty is appropriate if, in addition to meeting the requirements for imposition of a second-tier penalty, the "violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." *SEC v. Razmilovic*, 738 F.3d 14, 38 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 1564 (2014) (affirming imposition of third-tier civil penalties and citing 15 U.S.C. §§ 77t(d)(2)(A-C); 15 U.S.C. §§ 78u(d)(3)(B)(i)-(iii)).

Here, the third-tier penalties are appropriate given the fraudulent conduct as well as substantial losses to the investors who entrusted their money to Premier Links. The Premier Links Defendants' conduct appears to warrant the imposition of significant civil monetary penalties. *See* SEC's Mot. for Entry of Judgment, Mem. of Law at 8-10. It has been established that the "Premier Links Defendants directly and intentionally participated in a fraudulent scheme that involved fraud and deliberate (or at least reckless) disregard of regulatory requirements, which either resulted in substantial losses to Premier Links' investors or created a risk of substantial losses to Premier Links' investors. Though the specter of criminal prosecution at least partly explains their non-appearances in this case, when they were confronted with their wrongdoing in this enforcement action, the Premier Links Defendants chose to offer no defense. There is no evidence that the Premier Links Defendants have attempted to remedy their wrongdoing or to return the vast majority of any misappropriated assets to Premier Links' investors, nor is there evidence of any mitigating factor." Report and Recommendation at 22 (Sept. 14, 2017), DE 72.

In determining the amount of the penalty, the statutory penalty amounts appearing in the Securities Act and Exchange Act are adjusted for inflation. For each securities law violation occurring after March 3, 2009 (but not after March 5, 2013), the maximum third-tier penalty shall not exceed the greater of $150,000 for natural persons and $725,000 for others, or the gross

amount of pecuniary gain to the defendant.  *See* 17 C.F.R. §§ 201.1004, 201.1005; *see also* 15 U.S.C. § 77t(d)(2)(C); 15 U.S.C. § 78u(d)(3)(B)(iii).  There are numerous methodologies for calculating a civil penalty, which were presented to the Court by the SEC in its Motion for Default Judgment.  *See* SEC's Mot. for Entry of Judgment, Mem. of Law at 8-10.  In its Report, this Court noted that the methodology that most made sense in this case was to multiply the statutory penalty by the number of violations committed by the defendants:

> there are specific problems with three of the proposed methods based on the current record, such as the fact that there are apparently hundreds of victims (for the first method), the fact that the number of unlawful acts will be near impossible to ascertain (for the second method), and the lack of rationale for apportioning the amount of the alleged unlawful gain between defendants who are not jointly and severally liable (for the first and fourth methods). The only potentially workable method of calculating the civil monetary penalty based on the current record would be the third method: multiplying the statutory penalty by the number of securities laws violated.

Report and Recommendation at 23 (Sept. 14, 2017), DE 72.  The SEC, accepting the reasoning in the Report, requests that Ruffin be held liable for a civil monetary penalty of $600,000.  This penalty is calculated by multiplying the third-tier $150,000 penalty by four to reflect Ruffin's violation of four securities laws – (1) Section 5 of the Securities Act; (2) Section 10(b) of the Exchange Act and Rule 10b-5 thereunder; (3) Section 17(a) of the Securities Act; and (4) Section 15(a) of the Exchange Act.  The SEC requests that a $600,000 civil penalty for Ruffin be awarded for his past violations and also to deter future violations of the securities laws by Ruffin and others.

Thus, for the reasons already articulated in the prior Report and Recommendation, this Court recommends that Ruffin should pay a civil penalty of $600,000.

### D. Consent Judgments as to Defendants Amatulli, Jackson, Malloy, and DeSantis Should be Granted

"[T]he proper standard for reviewing a proposed consent judgment involving an enforcement agency requires that the district court determine whether the proposed consent decree is fair and reasonable, with the additional requirement that the public interest would not be disserved in the event that the consent decree includes injunctive relief." *See S.E.C. v. Citigroup Global Markets, Inc.*, 752 F.3d 285, 294 (2d Cir.2014) (citations omitted). "Absent a substantial basis in the record for concluding that the proposed consent decree does not meet these requirements, the district court is required to enter the order." *Id.*; *Securities and Exchange Commission v. Terminus Energy, Inc.*, 17cv1117, 2019 WL 1570599 at 1 (S.D.N.Y. Apr. 11, 2019); *S.E.C. v. CR Intrinsic Investors*, LLC, 26 F.Supp.3d 260, 263-64 (S.D.N.Y. 2014). The Circuit Court laid out four factors that a district court assess to determine whether a proposed consent judgment is fair and reasonable: (1) the basic legality of the decree; (2) whether the terms of the decree, including its enforcement mechanism, are clear; (3) whether the consent decree reflects a resolution of the actual claims in the complaint; and (4) whether the consent decree is tainted by improper collusion or corruption of some kind. *Id*. While noting that some cases may require "additional inquiry," the Second Circuit held that "the primary focus of the inquiry ... should be on ensuring the consent decree is procedurally proper" based on "objective measures" that do not "infringe on the S.E.C.'s discretionary authority to settle on a particular set of terms." *Id*.

The Court is persuaded that each of the Proposed Consent Judgments is fair and reasonable under the factors outlined in *Citigroup*. The Proposed Consent Judgments are legal and clear, and they resolve the claims in the Complaint and in accordance with the related

15

criminal action. There is no evidence in the record to suggest that the agreements are tainted by improper collusion or corruption of some kind. In light of that conclusion, the Court "is required to enter" the Proposed Consent Judgments. *Citigroup*, 752 F.3d at 294.

Thus, this Court respectfully recommends that SEC's Motion to Approve Consent Judgments as to Defendants Amatulli, Jackson, Malloy, and DeSantis be granted.

### IV. CONCLUSION

For the foregoing reasons, the Court respectfully recommends that the SEC's Motion for Entry of Judgment under Rule 54(b) be granted. More specifically, this Court recommends that Damon should disgorge $107,263.50 along with the prejudgment interest of $8,615.37 and his amount should be offset by the amount of restitution that he is ultimately ordered to pay in the related criminal action; Ruffin should disgorge $42,010 and pay prejudgment interest of $3,374.22; Bloome should disgorge $340, 675 and pay prejudgment interest of $28,263.42; and Byrne should disgorge $59,165 and pay prejudgment interest of $4,752.12; and that Ruffin should also pay a civil penalty of $600,000. The Court further recommends that SEC's Motion to Approve Consent Judgments as to Defendants Amatulli, Jackson, Malloy, and DeSantis be granted.

Plaintiff's counsel is directed to serve a copy of this Report and Recommendation upon all non-appearing defendants at their respective last known address and to file proof of service with the Court within seven (7) days of the date of filing of this Report and Recommendation.

### V. OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a

16

waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                                                 /s/
                                           Steven L. Tiscione
                                           United States Magistrate Judge
                                           Eastern District of New York

Dated: Central Islip, New York
        July 27, 2022